IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| THOMAS J. STAPLES,<br><br>                    Plaintiff,<br><br>     vs.<br><br>MORGAN STANLEY SMITH<br>BARNEY, MORGAN STANLEY<br>SMITH BARNEY FA NOTES<br>HOLDINGS LLC,<br><br>                    Defendants. | CV 13–13–H–CCL<br><br><br>ORDER |

Before the Court is a motion filed by Plaintiff Thomas J. Staples ("Staples") (Motion for Remand) and two motions filed by Defendants Morgan Stanley Smith Barney ("MSSB") and Morgan Stanley Smith Barney FA Notes Holdings LLC ("MSFA") (Motion to Dismiss Complaint and Motion to Confirm Arbitration Award). The motions are opposed. Having considered the briefs and arguments of the parties, the Court is prepared to rule.

1

**Background**

Staples terminated his employment as a financial advisor with MSSB on September 28, 2011, and updated his FINRA registration to reflect his new employment as a financial advisor employed by LPL Financial the next day. (Compl., Doc. 8, ¶ 11; ¶ 21; Doc. 8-2 at 4.)  When  Staples was hired by MSSB,[1] on or about May 30, 2008, he was given a $268,344.00 loan that was to be forgiven by MSSB in nine equal annual installments ($29,816.00), beginning on May 30, 2009.  (Special Compensation Agreement, Doc. 6-3 at 9, ¶ 1.)  In return for the loan, Staples signed a promissory note on May 30, 2008, promising to repay any remaining balance if his employment came to an end ("for any reason or no reason") before the conclusion of the nine-year note term.  (Doc. 6-1, ¶4.)  The

---

[1]  Staples was hired in 2008 by the Smith Barney Division of Citigroup Global Markets Inc., which was later combined with Global Wealth Management Group of Morgan Stanley & Co., Inc. in June 2009 as a joint venture to form Morgan Stanley Smith Barney Holdings, LLC, Staples' new employer.  The joint venture entity owns Defendant Morgan Stanley Smith Barney LLC and Defendant Morgan Stanley Smith Barney FA Notes Holdings LLC, which are the successors in interest on Staples' outstanding promissory note.  (Doc. 6-3 n1.)

2

one-page promissory note and the one-page special compensation agreement both included agreements to arbitrate any controversy arising from or related to either agreement, under the industry arbitration rules.[2]  (Doc. 6-1, ¶ 9; Doc. 6-3, ¶ 5.)  At the time Staples' employment terminated, the outstanding balance on his loan account was $189,582.00.

When Staples did not repay the outstanding balance on the promissory note in response to two demand letters sent in October and November, 2011 by MSSB to Staples' residential address (951 Caledonia, Butte) (Doc. 6-2), MSSB submitted a Statement of Claim on February 28, 2012, to FINRA, seeking payment of the outstanding balance of $189,582. (Doc. 6-3.)  FINRA selected a hearing location for the arbitration in Helena, Montana.

Under FINRA's Arbitration Code, § 13300(a), it was FINRA's duty to serve

---

[2]  The industry arbitration rules are known as the "Code of Arbitration Procedure for Industry Disputes" (the "Arbitration Code") (*see* Doc. 6-6), as adopted by the Financial Industry Regulatory Authority ("FINRA"), into which the National Association of Securities Dealers merged in 2007.  (Defs' Brief in Supp. Dismissal, Doc. 3 at 8.)  FINRA oversees arbitrations between financial advisors and their employers pursuant to the industry arbitration code.

a copy of the MSSB Statement of Claim upon Staples.  (Doc. 6-6 at 6.)  FINRA

must serve the Statement of Claim, first, at the associated person's[3] residence, and,

if service cannot be completed there, second, at the associated persons's business

address.  (Doc. 6-6 at 6, § 13301(a).)  Under the Arbitration Code, all pleadings

and documents are to be served on parties by first class mail or overnight mail,

which service is deemed to be accomplished on the date of the mailing.  (Doc. 6-6

at 6, § 13300(e).)  Staples was required to update FINRA's Central Registration

Depository ("CRD") within 30 days of any change of address.  (*See* Doc. 5, Brief

in Supp. Mot. to Confirm Award at 4 n.3.)

On March 12, 2012, FINRA mailed MSSB's Statement of Claim to Staples

---

[3]  Under the FINRA industry Arbitration Code, "[t]he term 'associated person' or 'associated person of a member' means a person associated with a member, as that term is defined in paragraph (r)."  FINRA Arbitration Code, § 13100(a).  A 'person associated with a member' is a "[n]atural person who is registered or has applied for registration under the Rules of FINRA."  FINRA Arbitration Code, § 13100(r)(1).  Also "[f]or purposes of the Code, a person formerly associated with a member is a person associated with a member."  FINRA Arbitration Code, § 13100(r).  (*See* FINRA Arbitration Code, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id= 1.)  Thus, Staples is an 'associated person' previously employed by MSSB.

at the residential address listed for him in the FINRA CRD, which listing was "107 E. Granite, Butte."[4]  This mailing was returned to FINRA as undeliverable. Pursuant to § 13301(a) of the Arbitration Code (Doc. 3-3 at 6), on April 20, 2012, FINRA again served the Statement of Claim on Staples,[5] this time by mailing it to Staples' CRD office address (LPL Financial, 951 Caledonia, Butte).  (Doc. 6-8.)

_____

[4]  Financial advisors are required to maintain their current addresses in the FINRA CRD and must update that address within 30 days after any change. (Compl., Ex. 2, Doc. 8-2 at 3.)  FINRA Arbitration Code require that FINRA mail the Statement of Claim, along with an explanation of the arbitration procedures, to the associated person (*i.e.,* a financial advisor employed by a FINRA member) at the associated person's residential address on file with FINRA.  (Doc. 6-6 at 6, § 13301(a).)  Unaccountably, Staples' MSSB office address prior to 2012 (which was 107 E. Granite) was listed as his residential address in the FINRA CRD, and, even more confusingly, his residential address (951 Caledonia Street, Butte) was listed as his office address in the FINRA CRD.  (Doc. 6-5.)  Apparently, when Staples updated his CRD entry in September, 2011, after being hired by LPL Financial, he listed his residential address as his LPL Financial office address, and he listed his old (now defunct) MSSB office address as his residential address.

[5]  The April 20, 2012, cover letter from FINRA states that it was sent by certified mail, but, in fact, it was sent by regular mail.  *(See* Doc. 18-10.)  This misstatement is immaterial to the effectiveness of service, however, because under the FINRA Code of Arbitration only regular mail is required for service of the Statement of Claim or any other pleading.  (Doc. 6-6 at 6, § 13300(d).)

5

Staples did not respond to FINRA's request for an answer to the claim.

On May 10, 2012, after receiving permission from FINRA, Defendants emailed their Statement of Claim to Staples at LPL Financial LLC (using Staples' individual LPL Financial email address: "thomas.staples@").  (Doc. 6-10.)  Again, Staples did not respond.

On June 26, 2012, FINRA sent Staples a letter by certified mail to his CRD business address, 951 Caledonia Street, Butte, notifying Staples that because he had not filed an Answer, no arbitration hearing would be held and the case would be decided on the existing pleadings, *unless* Staples filed an answer to contest the claim.  (Doc. 6-12.)  Staples acknowledges that this certified June 2012 mailing was signed for by a member of his family.  (Doc. 18-11.)  Nevertheless, Staples did not respond to this notice and did not file an answer as he was invited to do.  Staples now claims that his family member "misplaced" the June 2012 certified-mail correspondence from FINRA.  (*See* Doc. 17 at 11.)

On July 30, 2012, FINRA again notified Staples by mail addressed to his CRD business address (951 Caledonia, Butte)--which is also his residential

address--that an arbitrator had been selected.  (Doc. 6-13.)  Staples did not respond.

On September 5, 2012, FINRA notified Staples by mail addressed to his CRD business address (951 Caledonia, Butte) that the arbitrator had reached a decision and enclosed a copy of that decision.  (Doc. 6-14.)  Staples did not respond.

The arbitrator awarded the claim to MSSB and against Staples in the amount of the outstanding balance ($189,582), plus interest (9.25%) accruing from September 29, 2011, until paid in full.  (Doc. 6-4.)  The arbitrator denied MSSB's request for attorneys' fees and assessed $3,450 in arbitration fees against MSSB and $300 in fees against Staples.  (Doc. 6-4.)

Staples now claims that when he received a telephone call on November 23, 2012, from David Carey of  the FINRA Department of Enforcement, this telephone call was the first time he heard of the arbitration award.  (Staples Affidavit, Doc. 12-1, ¶ 8.)  On November 29, 2012, FINRA sent an overnight letter to Staples that included a copy of the arbitration award.  (Doc. 6-14.)

Staples admits that he received this letter and enclosures on November 30, 2012. (Staples Affidavit, Doc. 12-1, ¶ 11.)  This overnight letter was sent to Staples at his CRD business address (951 Caledonia, Butte), and it also notified Staples of FINRA's intent to suspend his ability to work for any FINRA-member firm in about three weeks, effective December 20, 2012, unless Staples (1) paid the arbitration award in full, (2) settled with MSSB/MSFA, (3) filed an action to vacate/modify the arbitration award, or (4) filed for bankruptcy protection and asserted a defense to the arbitration award.  (Doc. 6-15.)[6]  Staples does not deny that he received this last and final FINRA mailing, which was sent to the same address as the previous four mailings.

About six weeks later, Staples did respond, but not directly to FINRA. Instead, Staples filed a Complaint in First Judicial District, Lewis and Clark

_____

[6]  FINRA also notified Staples in that letter that he had the right to request a hearing.  Staples was informed that a copy of this notification letter was also being mailed to Staples' current FINRA member-employer, at the address of the Managing Director and General Counsel of  LPL Financial LLC, in Boston, Massachusetts.

County, on January 11, 2013, asserting in Count 1 that his right to due process under the Montana Constitution (Article II, Section 17) was violated when he was not properly served with the arbitration claim, depriving him of "the opportunity to obtain counsel, participate in the arbitration or assert his defenses or defend his rights." (Compl., Doc. 8, ¶ 26.)  Next, Staples alleges in Count 2 of the Complaint that Rule 4(e), Mont. Rules of Civil Procedure (Mont. Code Ann. Title 26, Chapter 20), was violated because he was not served with the arbitration Statement of Claim personally.  (Compl., Doc. 8, ¶ 29.)  Finally, Staples alleges in Count 3 of the Complaint that he was denied the right to defend his life and liberties (Montana Constitution, Article II, Section 3) by not being properly served with the arbitration claim.  (Compl., Doc. 8, ¶ 32.) Staples requests that the court declare that the arbitration award is null and void due to lack of proper service and that the court award him his costs and reasonable attorneys' fees.

**Motion for Remand**

    Staples asserts that this Court must decide the motion for remand prior to

9

deciding MSSB's motions, and this Court agrees that is the proper sequence.  *See*

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d

760 (1999) (questions regarding subject matter jurisdiction customarily first matter

addressed).  Staples asserts that removal was improper in this case because

"Defendants voluntarily chose Helena, Montana as the proper venue and

jurisdiction for their arbitration against Plaintiff."  (Pl.'s Brief in Supp. Remand,

Doc. 12 at 7.)  In addition, Staples asserts that MSSB cannot claim diversity of

citizenship when the promissory note was signed in Montana and was intended to

be performed in Montana.  Finally, Staples points out that the Complaint states no

federal questions.  Since MSSB bears the burden of showing that the removal is

proper, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996),

Staples argues that MSSB has failed to meet that burden and remand should be

granted.

   Plaintiff is correct that the Federal Arbitration Act does not create its own

basis for jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n.32, 103

S.Ct. 927, 74 L.Ed.2d 765 (1983).  Despite the fact that an arbitration proceeding

is one of the central issues in controversy, that fact does not give rise to subject

matter jurisdiction.  Instead, MSSB asserts that this Court possesses subject matter

jurisdiction over the parties due to their diversity of citizenship.  Defendant MSSB

is a Delaware limited liability company, its members are Delaware corporations,

and both MSSB and its members have their principal place of business in New

York.  Defendant MSFA, likewise, is a Delaware limited liability company, its

members are Delaware corporations, and both MSFA and its members have their

principal place of business in New York.  Given that Staples is a Montana citizen,

there is complete diversity of citizenship between the parties.  *See* 28 U.S.C.

§ 1332.   The Court distinguishes the case relied upon by Plaintiff, *Gilchrist v.

Strong*, 299 F.Supp. 804 (W.D. Okla. 1969), because in that case the federal

district court found that "diversity jurisdiction . . . was 'manufactured' for the

purpose of invoking federal jurisdiction in violation of 28 U.S.C.A. 1359."  *Id.* at

807.  There is no such allegation of collusive or improper joinder in this case.

Plaintiff misunderstands the nature of diversity jurisdiction, which depends

11

on who the parties are (*i.e.*, citizens of states) as opposed to what they do (*e.g.*, select a particular location for an arbitration hearing).  The fact that MSSB selected Helena, Montana, as the location for an arbitration hearing does not change the fact that MSSB is a diverse party for subject-matter jurisdiction purposes any more than Staples could lose his Montana citizenship by visiting New York City.

Staples does not contend that the $75,000 amount-in-controversy requirement is not satisfied (nor could he, given that the arbitration award he seeks to have the Court declare null and void is $189,582).  *See Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005).  Neither does Staples contend that the Defendants are citizens of Montana.  The Court concludes that removal is proper under 28 U.S.C. § 1332, and remand should be denied.

**Motion to Confirm Arbitration Award**

Defendants MSSB and MSFA have filed a motion to confirm their arbitration award, and they seek both confirmation of the award and judgment in their favor.  The Defendants assert that there are no grounds for vacating or

12

modifying the award.

The scope of the arbitration agreement between Staples and MSSB/MSFA covered "any controversy arising out of or relating to this Note or a default hereunder," referring to the $268,344.00 Promissory Note signed by Staples on May 5, 2008.  Under the Note, the unpaid portion of the loan accelerates upon default, and "[d]efault shall mean where the Borrower's employment . . . comes to an end for any reason or no reason. . . ."  (Doc. 6-3 at 7, ¶ 4.)  Staples ended his employment on September 28, 2011, approximately three years and four months after Staples signed the Promissory Note and agreed to arbitrate any dispute arising out of or related to the Note or any default on the Note.  When Staples terminated employment, there was $189,582 still unpaid under the Promissory Note.

The arbitrator found that Staples was properly served by FINRA, repeatedly, by mail and by email, and that Staples is "therefore bound by the Arbitrator's ruling and determination."  (Doc. 6-4 at 2.)

The Federal Arbitration Act provides that "within one year after the award

13

is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 9.  "If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."  9 U.S.C. § 9.  The arbitration award was made in Helena, Montana.  (Doc. 6-4 at 1.)

An arbitration award may be vacated if it "was procured by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1), or where the arbitrator was biased, engaged in misconduct, or exceeded his powers.  *See* 9 U.S.C. § 10(a)(2)-(4).  An arbitration award may also be modified for "material miscalculation," "material mistake," or "imperfect[ions] in [a] matter of form not affecting the merits."  9 U.S.C. § 11. These grounds for vacatur or modification are exclusive.  *Hall Street Assocs., L.L.C. v. Mattell, Inc.*, 522 U.S. 576, 578 (2008); *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 989-90 (9th Cir. 2003) (en banc).

The standard for vacatur is a high bar, for it is not enough for a plaintiff to show that the arbitrator "committed an error--or even a serious error."  *Stolt-*

14

*Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 670, 130 S.Ct. 1758, 1767, 176 L.Ed.2d 605 (2010); *see also United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").  "Neither [an arbitrator's] erroneous legal conclusions nor unsubstantiated factual findings justify judicial review of an arbitral award" under the FAA.  *Bosack v. Soward*, 586 F.2d 1096, 1102 (9th Cir. 2009).  Only manifest disregard of the law (which is a narrow subset of acts falling into the general statutory category of acts in excess of the arbitrator's powers) will support vacatur when it can be shown that the arbitrator appreciated the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.  *Matthews v. National Football League Management Council*, 688 F.3d 1107, 1114  (9th Cir. 2012).  The Ninth Circuit long ago held that "courts must not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision draws its

15

essence from the contract." *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp*, 935 F.2d 1019, 1024 (9th Cir. 1991).  Only the statutory conditions for vacatur (corruption, fraud, undue means, or arbitrator bias, misconduct, or actions in excess of powers), *see* 9 U.S.C. § 10, or for modification (material miscalculation, material mistake, imperfections in form), *see* 9 U.S.C. § 11, can be used to justify judicial review.

Staples has not shown corruption, fraud, undue means, or arbitrator bias, misconduct, or exceeding of powers.  Staples has not shown that the arbitrator made a material miscalculation, a material mistake, or created some other imperfection in form.  The evidence supports the arbitrator's finding that FINRA properly served Staples with the Statement of Claim and other arbitration notices, including the arbitration award.  It was Staples responsibility to update his CRD as to both his business and residential addresses, and it was his failure to do so that caused him not to receive FINRA's first mailing of the Statement of Claim on March 12, 2012.  Despite that initial failure, FINRA followed the Arbitration Code properly and successfully notified Staples numerous times of the arbitration

16

proceeding by mailing correspondence to Staples' residence.  Staples simply refused to reply to any of FINRA's attempts to contact him.  Staples cannot refuse to participate in arbitration and then undo the arbitration award by claiming that he did not know about it.  Staples is not an unsophisticated consumer.  When Staples describes himself, he asserts that "I have held a Series 7 securities license and been a FINRA registered representative for 14 years and at my peak managed over $115,000,000 of customer assets in 450 client accounts." (Doc. 14-1, ¶ 1.)  A sophisticated professional such as Staples can reasonably be expected to open mail from his regulatory authority.  The arbitrator's finding and conclusion that Staples is bound by the arbitration decision is justified both in fact and in law.

Moreover, Staples missed the deadline for filing a motion to vacate the arbitration award even though the deadline fell *after* the time that he admits he knew about the award.  As a matter of fact, as of the date of this Order, Staples has not *yet* filed a motion to vacate the arbitration award.  Failure to properly serve a motion for vacatur of an arbitration award waives the party's right to oppose a motion for confirmation of the award.  See *Western Employers Ins. Co. v. Jefferies*

17

*Co., Inc.*, 958 F.2d 258, 260 (9th Cir. 1992).

Under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.  According to the FINRA Industry arbitration code, the award was deemed delivered on September 5, 2012.  (Doc. 6-6, § 13300(e).)  The September 5, 2012, delivery was made to Staples' address at 951 Caledonia St., Butte, where he had received a certified mailing on June 29, 2012 (Doc. 18-11), and where he admittedly received an overnight mailing from FINRA on November 30, 2012 (Doc. 17 at 2).  FINRA and the Defendants were entitled to presume--as the Arbitration Code presumes--that Staples received the September 5, 2012, arbitration decision that was properly served upon him by first-class mail as required by the FINRA Code of Arbitration Procedure for Industry Disputes.[7]  "The three month notice requirement of section 12 for appeal

---

[7]  Even if the Court were to take the November 30, 2012, date of actual receipt as the "delivered" date, Staples failed to file a motion to vacate the arbitration award by the deadline of February 28, 2013.

of an award on section 10 or 11 grounds [would be] meaningless if a party to the

arbitration proceeding [could] bring an independent action asserting such claims

outside the statutory time period provided for in section 12." *Romero v. Citibank*

*USA, Nat. Ass'n*, 551 F.Supp.2d 1010, 1013 (E.D. Cal. 2008) (quoting *Lafarge*

*Conseils Et Etudes, S.A. v. Kaiser Cement*, 791 F.3d 1334, 1338-39 (9th Cir.

1986)).  The parties agreed in their contract to be bound by arbitration under the

industry arbitration rules. *See Volt Info. Sciences, Inc. v. Board of Trustees of*

*Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (FAA allows parties to

"specify by contract the rules under which [their] arbitration will be conducted.").

Under the parties' rules of arbitration in this case, the arbitration award was

delivered by mail on September 5, 2011.  Moreover, Staples had actual notice 10

days before the three-month deadline, when he received a telephone call from

FINRA on November 23, 2012, verbally notifying him of the September 5, 2012,

arbitration award.  (Compl. Exhibit 1, Doc. 1-1 at 14, ¶ 3.)  Despite first-class mail

service on September 5, 2012, actual verbal notification on November 23, 2012,

and then subsequent written notice of the arbitration award on November 29,

19

2012, Staples still missed the three-month deadline on or about December 5, 2012, for filing and serving a motion for vacatur on MSSB/MSFA.  The Court notes that the only motion Staples has filed is a motion for remand to state court--not a motion for vacatur of the arbitration award.

The Court has considered whether equitable tolling under these circumstances would effectuate congressional purposes in enacting the FAA.  *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427 (1965).  At least three congressional purposes are at issue:  the purpose of promoting final and speedy resolution of disputes, the purpose of not permitting "unnecessary public intrusion into private arbitration procedures," *see Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc), and the purpose of preserving due process by the avoidance of arbitration fraud, corruption, partiality, or acts in excess of arbitral powers, *see* 9 U.S.C. §10.  Staples presents no facts that support equitable tolling.  His Complaint merely asserts--without any explanation--that he did not receive FINRA's April 20, 2012, Statement of Claim mailed to his address at 951 Caledonia Street.

20

Staples fails to explain how he missed all the other mailings to 951 Caledonia Street (not to mention the emails sent to him at his business LPL Financial email address, which address begins with "thomas.staples@" (*see* Doc. 6-9)).  Staples also fails to explain why he did not act immediately to assert his rights in the arbitration proceeding *when he was informed in writing* by FINRA overnight letter dated November 29, 2012 (received by him before the statutory deadline elapsed ) *that he had the right to file a motion to vacate the arbitration award*.  (Doc. 6-15 at 1.) Instead, Staples filed civil litigation in state court almost two months later.  Moreover, throughout all these arguments, Staples fails to even attempt to demonstrate that he has any defense to the arbitration award or defense to repayment of the promissory note, although Staples asserts that he has been wrongfully discharged by MSSB.[8]

Taken altogether, the evidence shows unmistakably that Staples actively

---

[8] MSSB asserts that Staples is also bound to mandatory arbitration of any employment disputes pursuant to the requirement that financial advisors sign Form U-4 (the uniform application for securities industry or transfer), which contains a mandatory arbitration clause.  (Doc. 20 at 7.)

21

avoided participating in the arbitration proceeding and simply denies without explanation that he received an arbitration award properly served upon him by FINRA at his correct address, in addition to four other FINRA mailings served upon him at his correct address.   Consistent with his avoidance of the arbitration proceedings, Staples waited until after the vacatur statute of limitations elapsed before filing civil litigation in state court.   Indeed, Staples continues today in his attempt to deprive MSSB/MSFA of their right to arbitrate the underlying dispute, and he has never filed a proper motion for vacatur.   The interests of justice do not require equitable tolling in such a circumstance.   *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002).

This Court must confirm the arbitration award unless Staples can show one of the statutory grounds for vacatur, modification, or correction:   "the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 USCS §§ 10 and 11].  9 U.S.C. § 9 (emphasis added).   Plaintiff bears the burden of persuasion to show that the Court should vacate or modify instead of confirm the arbitration award.   *Hall Street*

22

*Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 577 (2008).  Staples asserts that

FINRA's service by mail of the statement of claim was improper.  It was not.  *See*

FINRA Code of Arbitration §§ 13300(d)-(e) (allowing service by mail of

"pleadings and other documents").  A Statement of Claim is a type of pleading.

(*See* Brief in Supp. Mot. to Dismiss, Doc. 20, at 6 n.2, citing FINRA Code of

Arbitration § 13100(s).)  Email is another appropriate form of service.  FINRA

Code of Arbitration § 13300(d).  Staples was thus served the Statement of Claim

properly by regular mail on March 12, 2012, and April 20, 2012, and once by

email on May 10, 2012 (Doc . 6-10 at 1).  Additional correspondence from

FINRA, warning Staples that the arbitration would be decided without hearing if

he did not respond, was sent to Staples' CRD business address (951 Caledonia

Street) on June 26, 2012.  As a registered associate of a FINRA member, it was

Staples' responsibility to maintain proper addresses for all FINRA

communications.  The arbitrator's finding that service was properly made and

Staples should therefore be bound by the arbitrator's ruling and determination is

not in excess of the arbitrator's powers or mistaken in any material respect.

23

Staples fails to carry his burden of persuasion, *see Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 577, regarding his argument that the arbitration procedure was improper or that there are any issues of fact remaining.  Therefore the arbitration award ought to be confirmed.

**Motion to Dismiss Complaint**

Based on all the foregoing, the Court finds that Staples' Complaint is an impermissible collateral attack upon an arbitration award that is time-barred by the Federal Arbitration Act.  Furthermore, based solely upon the facts and documents alleged by Staples in his Complaint, and all reasonable inferences therefrom, Staples has failed to make a colorable claim for relief that meets the statutory prerequisites for vacatur of an arbitration award.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Remand (Doc. 11) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Confirm Award

24

(Doc. 4) is GRANTED, the arbitration award is CONFIRMED, and judgment shall

enter in favor of Defendants in the amount of $189,582, plus interest (9.25%)

accruing from September 29, 2011, until the satisfaction of this judgment.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss the

Complaint (Doc. 2) is GRANTED, and the Plaintiff's Complaint is DISMISSED

with prejudice.  All relief is denied to Plaintiff.  The Clerk shall enter judgment.

Dated this 28th day of October, 2013.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE


25